## SAM DAVIS v. THE STATE.

No. 2483.   Decided May 28, 1913.

**1.—Attempt to Bribe—Indictment—Officers.**

Under article 174, Penal Code, the officers named therein who may be bribed include the county attorney, and where the indictment alleged that the officer attempted to be bribed was an assistant county attorney, it was not necessary to allege whether this made him a State or county officer, or that he was a judicial officer.

**2.—Same—Gist of Offense—Attempt to Bribe.**

The gist of the crime of attempting to bribe an officer is the danger and injury to the community at large; this being the case, attempts to bribe become clearly indictable, as the State must guard against the tendency to corrupt as well as against actual corruption.

**3.—Same—Sufficiency of the Evidence.**

Where, upon trial of attempting to bribe an officer, the indictment and the evidence were sufficient to support the conviction, there was no error on that ground.

**4.—Same—Charge of Court—Inducement to Tender Bribe.**

Where one is induced to tender a bribe, he is, nevertheless, guilty of an offense, but under the law, the person who induces such a bribe, although he does not act corruptly, is, nevertheless, an accomplice, and where such issue is raised by the evidence upon trial of attempting to bribe an officer, the court should submit a charge on accomplice testimony, and his failure to do so is reversible error.   Overruling O'Brien v. State, 6 Texas Crim. App., 665.

**5.—Same—Offense Defined—Rule Stated.**

An offer to bribe a public official is a transgression of a public right and the consent or non-consent of the officer can not affect the criminality of the act of the person who makes the offer, even though the words, acts and conduct inducing said offer were made by the official; however, the official will be held to be an accomplice, although he did not intend to accept the bribe and was simply seeking to entrap the defendant.

**6.—Same—Charge of Court—Defensive Theory.**

Where, upon trial of attempting to bribe an officer, the evidence raised the issue that the money tendered to the officer was to be used in paying a fine for defendant's brother, this issue should have been submitted to the jury in behalf of defendant.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of an attempt to bribe an officer; penalty, two years imprisonment in the penitentiary.

The following statement of the case made by the Assistant Attorney-General, is substantially correct:   One Dilmous Davis, before the alleged offense in this case had been convicted of a felony, towit: assault with intent to rape, and there was pending in the Criminal District Court of Dallas County a motion for new trial in the Dilmous Davis case. John G. Wilson, assistant county attorney, was acting for the State in matters relating to the motion for new trial in said Dilmous Davis case.

He testified that while this motion was pending, appellant Sam Davis, brother of Dilmous Davis, had a number of conversations with him; that the first time he came to see him he asked him if he would not agree to grant a new trial or rather to recommend to the court that a new trial be granted; that the witness Wilson told him he would not, stating that he thought his brother Dilmous had a fair trial; that about a week later appellant again came to his office and told witness that he thought he ought to agree to a new trial and recommend that the judgment be set aside and a new trial granted and a plea of aggravated assault entered; that the witness refused to do so, and appellant then went away, and several days thereafter came back and renewed his insistence that the witness should recommend that the judgment be set aside and a new trial granted; that at that time he, witness, was in his general reception room and appellant asked to see him privately; that he retired to his private room and appellant renewed his request that the judgment be set aside in the Dilmous Davis case and a new trial granted; that witness told appellant that he could not do so, and appellant said, "Now, Mr. Wilson, I have been here a great many years and I can be of great service to you in more than one way, and if you will agree to see to it I will see that you are not a bit out"; that witness replied: "I can not help how long you have lived here, my duty is clear as a public officer and I can not agree to that"; that appellant then replied that he would make it to his interest. Witness then said: "I propose to be a straight man and I won't entertain any such proposition at all, and you had better let the matter rest where it is." Appellant then left, and in a few days came back to see him again, perhaps a week or so thereafter, came up to the desk in the general reception room, walked up and shook hands, and said: "Well, I have just sold a cow and I have in my pocket a check for $50. I ought to have gotten more but I have $50." Witness J. G. Wilson further testified: "Mr. Brandenburg was in the office at the time and I excused myself from Mr. Davis and went out. I then came back to where Mr. Davis was standing by my desk, and where I had left him, and he said, 'I want to see you privately,' and I told him all right. I went into the same office where I had seen him privately before. No one was present except Mr. Davis and myself. He began again by saying that he thought I ought to be willing to grant his brother a new trial, or rather, to agree for the court to set aside the judgment and use my influence to grant him a new trial. I says, 'Mr. Davis, people are frequently asking favors of us, but few favors seem to be coming our way,' and Sam Davis says, 'Yes, I know you boys in the office are not paid what you ought to have,' and he says, 'You do this and I will see that you are well taken care of.' I am sure that is exactly the language he used—he used some such language as that. Then I asked him what he meant by that expression, and Sam said, 'I will see that you are well paid,' and I said, 'What do you mean?' and he said, 'What I would like for you to do would be for you to agree to recommend to the court that the judgment against Dil-

mous, my brother, be set aside and a new trial granted, and let him plead guilty to an aggravated assault,' is my recollection of the conversation as it progressed, and I said, 'Well, I do not know that the court would agree to that,' and he said, 'Well, if you recommend it to the court the court will do what you recommend. I have found out that much,' and I said, 'Well, Sam, I can not tell you about it just now. I will have to see you again, a little later, about it.'. And he said, 'All right, when shall I return?' and I said, 'Well, I do not know, shortly if you would like, and we will talk it over further,' and he said, 'In an hour?' and I said, 'I suppose an hour.' Before that, however, I said, 'Sam, you understand I could not take a check at all, that if I do a thing like that it will have to be in money,' that I could not take a check. Then he warmed up to the subject again and suggested that I recommend to the court that a new trial be granted and that after a new trial was granted to recommend—ought to file a motion that the case ought to be finally disposed of from the docket. Then he went away. I also saw after that Mr. Strait and Mr. Alfred Gross. Those gentlemen were in a little toilet room just east of the private room where we had this conversation. Mr. Davis came in my office and we immediately retired to the private office that I have been telling you about. When I went in I pulled the door behind me. The other door opening out into that office was standing ajar, and Mr. Davis went and pushed that door to. We took our stand immediately in front of this door in the toilet, within, I would say, twelve inches, just as close to it as we could practically stand. In the meantime the lights in toilet room had been turned out and it made the room very dark. Mr. Davis took his stand in front of me and says, 'Well, I am ready,' and I says to him, 'Mr. Davis, I have a little instrument that I want to read to you and I want you to sign it.' It was the instrument I prepared in the interim. I told Mr. Davis that I wanted to read this instrument to him and that I wanted him to sign it, giving as my reasons that if it should ever develop in the future that he had paid me any sum of money at all that he might claim that it had been paid to me as a matter of fine and costs in the case, and that if he paid · this money to me and I took it, I would want to know that it was mine and not to go into the treasury. I read him that instrument and Sam Davis said, 'No, I can not sign that, I would not have my name to any paper.' This instrument was read over to him in front of this door, in a tone of voice something like I am speaking now, possibly not so loud. The instrument is as follows:

'Dallas, Texas, September 5th, 1912.

Mr. John G. Wilson, First Assistant County Attorney, Dallas, Texas.

Dear Sir: I am handing you herewith the sum of $......, which is to be your individual money, to be used by you in such manner as you may choose with the understanding that you are to use the power and authority vested in you as assistant county attorney, and that you are to use your influence as such official to the end that the judgment

of conviction rendered in Criminal District Court of Dallas County, Texas, on the 31st day of July, 1912, against Dilmous Davis, on a charge of assault with intent to rape, be set aside and a new trial granted; and with the further understanding that you, as such official, file a motion, and use the power and authority that you, as such official have, to have the case finally dismissed from the docket.'

"I read that to Mr. Davis and he objected to it as I have told you, and I says, 'Mr. Davis, I will ask you if that instrument recites the facts, or do you subscribe to the terms and conditions of that instrument?' to which he gave an acquiescence, that that was his purpose and intention, and I says, 'All right.' Then he put his hand in his pocket and says, 'I will pay you now,' or 'I will pay you a hundred dollars,' and drew his hand out about this time, stating, 'I will pay you fifty dollars now and later I will pay you the rest.' I believe he said shortly, or pretty soon. Anyway he gave me to understand that soon thereafter he would pay me the balance. I recognize the writing on that instrument and deposited it in the records of the county attorney's office. He pulled out some money and I held out my hand, just in front of the door where we were standing. I held out my hand and he handed me a twenty dollar bill, a twenty dollar bill, and a five dollar bill. Then he said, 'I thought I had fifty dollars, I see I only have forty-five,' and he says, 'I will go and get the other five.' As he started to turn and walk away the gentlemen in the other room walked out and placed him under arrest."

Officers W. E. Strait and Alfred Gross testified to hearing the conversation detailed by Mr. Wilson, and to arresting appellant after they heard and saw the transaction.

The appellant's defense was that he thought he had the right to talk to the county attorney about granting a motion for new trial and recommend that the county attorney get the court to grant the new trial and take a plea of guilty for aggravated assault in the Dilmous Davis case, and that it was his purpose to pay the county attorney the fine and costs against his brother, that is, to pay $25 fine and the balance as costs, and it was not his purpose to try to bribe him.

No brief on file for appellant.

*C. E. Lane*, Assistant Attorney-General, for the State.—On question that assistant county attorney is a judicial officer, etc.: Gonzales v. State, 26 Texas, 196; Harris Co. v. Stewart, 91 id., 133.

On question of inducing bribes: Rath v. State, 35 Texas Crim. Rep., 142.

On question of court's refusal to charge on accomplice: Smalley v. State, 50 Texas Crim. Rep., 95, 127 S. W. Rep., 225; Rath v. State, 35 Texas Crim. Rep., 142.

HARPER, JUDGE.—Appellant was prosecuted and convicted for attempting to bribe one of the assistant county attorneys of Dallas County, and his punishment assessed at two years confinement in the State penitentiary.

Appellant filed a motion to quash the indictment on a number of grounds. As the first count was not submitted by the court to the jury, those grounds complaining of that count need not be considered. As to the second count, it charges that appellant did offer to J. G. Wilson, Assistant County Attorney of Dallas County, one hundred dollars to file a motion to set aside and recommend to the judge of the District Court of Dallas County that a judgment of conviction then and there had against one Dilmous Davis, wherein the said Dilmous Davis had been adjudged guilty of an offense against the laws of the State, and sentenced to ten years in the penitentiary, be set aside. Article 174 of the Penal Code states if any person shall bribe or offer to bribe any executive, legislative or judicial officer he shall be punished by confinement in the penitentiary for a term not less than two, nor more than five years. These words, "executive, legislative and judicial," are meant in their broadest sense and were intended to embrace every officer in this State,—State, county and precinct. The government is said to be divided into three separate and distinct departments,—executive, legislative and judicial, and the Legislature, by the use of these, intended and did make it plain that each and every officer in the State was embraced therein. It is immaterial whether he was a State, county, district or precinct officer, the allegation that he was assistant county attorney of Dallas County was sufficient and it was not necessary to state whether this made him a State or county officer. The indictment alleges that appellant did then and there unlawfully and corruptly offer to bribe J. G. Wilson, a duly and legally appointed and qualified assistant county attorney of Dallas County in the State of Texas, being then and there a judicial officer of the State, etc. Appellant insists that a county attorney is not a judicial officer. Under article 176, Penal Code, it would seem that the Legislature has classed him, under the bribery statute, a judicial officer, but this would be an immaterial allegation, as the indictment had alleged the office he held, and these words are not essential to charge the offense and could be treated as surplusage.

" 'The gist of the offense,' says Mr. Bishop, 2 Bishop's Crim. Law, sec. 86, 'seems to be the tendency of the bribe to prevent justice in any of the governmental departments,—executive, legislative, or judicial.' So in Walsh v. People, 65 Ill., 58, in holding that an unsuccessful attempt to bribe is criminal, the court say: 'The reason of the law is plain. The offer is a sore temptation to the weak or depraved. It tends to corrupt, and as the law abhors the least tendency to corruption, it punishes the act which is calculated to debase and which may affect prejudicially the morals of the community.' Bribery is a crime which directly affects the community at large through its officers and representatives. Among ancient peoples, and even among the Romans, the giving of

rewards and emoluments to public officers, and especially judicial officers, was tolerated and even encouraged; and without such inducements no audience could be had: See 4 Bla. Com., 139. The enlightened civilization of the present age quickly apprehended the danger of any such custom; and hence the fiat of the common law against it. And in modern times, the heinousness of the offense becoming more apparent as the power of wealth increased, the crime has been made punishable as a felony. The reason of the rule of the common law, and of the greater stringency of modern statutory law is clear. The spirit of any democratic government is utterly abhorrent to anything which tends to corruption in the representatives of the people, or threatens the purity of the administration of the government. And as wealth and power may become powerful forces in this dangerous direction, the protection of equal rights among the people demands that a severe penalty be visited upon any member of the community who gives, or offers to give, anything of value to any representative of the community, whether executive, legislative, or judicial, and upon any such representative who receives, or offers to receive any such reward as an inducement to official action. In fine, the gist of the crime is the danger and injury to the community at large. Such being the case, attempts to bribe become clearly indictable, for the State must guard against the tendency to corrupt as well as against actual corruption, both being alike dangerous and injurious to the community at large. Therefore, an indictment for attempting to bribe a township trustee to appoint a certain person as school-teacher need not allege that there was a vacancy: Shircliff v. State, 96 Ind., 369. Here is the tendency to corrupt to the injury of the community at large, therefore the offer was an attempt to 'bribe.' So one may be convicted of attempting to bribe a person to avoid the service of a subpoena, although the indictment alleges neither the existence, issuance, nor service of the subpoena: Scoggins v. State, 18 Texas Crim. App., 298.

"For the same reason it is also bribery, though the act requested as the price of the bribe be not properly within the official power of the officer approached, provided it is contemplated that he acts in an official capacity, and if necessary usurp functions not his own.

"At common law an offer of a bribe to a judge to decide a case not pending, but to be instituted afterwards before him, but which was never actually commenced, is indictable: See People v. Markham, 64 Cal., 157. All the reasons of the rule here prevail. The tendency to corrupt justice is present at the time of the offer, and the offense is then complete. Mr. Stephen says: 'Every gift or payment paid in respect of, or in relation to, any business having been, being, or about to be, transacted before any such person in his office is a bribe, whether it is given in order to influence the judicial officer in something to be done, or to reward for something already done, and whether the thing done or to be done is itself proper or improper: Stephen's Dig. Crim. Law, art. 126." (See 97 Am. Dec., pp. 713-14.)

The court did not err in overruling the motion to quash the indictment for it clearly and succinctly charged a violation of article 174 of our Code. The testimony of Mr. J. G. Wilson, assistant county attorney, would support a conviction, corroborated as he is by the two deputy sheriffs. Mr. Wilson specifically denies that he solicited or induced appellant to tender him the bribe, while on the other hand, appellant testifies in his own behalf, and first states that he did not offer to pay the money to Mr. Wilson as a bribe, but as he understood the matter, he was offering to him the money to pay a fine that was to be assessed against Dilmous Davis in lieu of the penitentiary sentence. He also testifies that he was induced by Mr. Wilson to make the proposition he did, that Mr. Wilson suggested, "You are always asking us for favors, and doing nothing for us," and they then went into a private office where the remainder of the negotiations took place. As stated before, Mr. Wilson denies making the first advance, but says when appellant made a suggestive remark, they did go into a private office and "he led him on by apparent acquiescence and questions."

Appellant requested the court to instruct the jury that if the first suggestion leading to the bribery was made by Wilson and by his acts and conduct he was the inducing cause of appellant offering the bribe, this in law would make him an accomplice in the crime even though at the time he had no idea of accepting the bribe, and was merely inducing appellant to make the offer that a prosecution might follow. The court refused the special charge requested, and refused to submit the issue of whether or not Mr. Wilson was an accomplice, and refused to instruct the jury that if Mr. Wilson was an accomplice they could not convict appellant, unless there was other testimony tending to connect the defendant with the offense charged. The court seemed to hold to the view that Mr. Wilson could not be an accomplice, holding that if Wilson made the first advance and induced appellant to make the tender, no offense would be committed. And the case of O'Brien v. State, 6 Texas Crim. App., 665, would seem to support the court in such holding, but we do not think this is the law. Every person is responsible alone for his own criminal conduct, and the lack of criminal intent on the part of Mr. Wilson could not and would not inure to the benefit of appellant if he, in fact, tendered him the money as a bribe. If he did so, he would necessarily have the *intent to bribe*, he not knowing that Wilson did not intend to accept *it* as a bribe. The correct principle of law is tersely stated in the case of People v. Liphardt, 105 Mich., 80, as follows: "We know of no case that holds that one who has committed a criminal act should be acquitted because induced to do so by another. It is merely when the criminality of the act is shown to be absent by the fact of the inducement that such proof justifies an acquittal." The evidence as to Mr. Wilson, introduced both by the State and defendant, shows an absence of criminality. But not so as to appellant. Even though Mr. Wilson induced him to make the tender, yet he made the tender (if the money was not to pay a fine) with *the intent to influence* Mr.

Wilson in his action in the premises, and his act under such circumstances would be criminal.

Considerable legal hair-splitting has been indulged in by courts and text-writers in discussing this subject. It must be admitted at the outset that it is beyond the power of a private person to license the commission of a crime. As to those more serious crimes which are purely transgressions of the public right, it must follow that consent thereto of private persons directly injured thereby can not, to any extent, purge such crimes of their character as public wrongs, nor render those who commit them less liable to punishment. The consent of a woman upon whom an abortion was performed constitutes no defense to a prosecution therefor: Commonwealth v. Wood, 77 Mass., 85; Commonwealth v. Snow, 116 Mass., 47. Similarly, consent of the deceased is no defense to a prosecution for homicide: Regina v. Allison, 8 Car. & P., 458. In a prosecution for bribery, the fact that the prosecuting witness was the giver of the bribe in question can not excuse defendant: Newman v. People, 23 Colo., 300; nor is the latter exculpated by proof that the bribe was instigated for the purpose of entrapping him: People v. Liphardt, 105 Mich., 80; State v. Dudoussat, 47 La. Ann., 977.

The offer to bribe a public official is a transgression of a public right, and the consent or non-consent of the officer can not affect the criminality of the act of the person who makes the offer, and even though Mr. Wilson, by his words, acts and conduct may have been the inducing cause of the offer to bribe, yet, if appellant did, in fact, tender money to the officer with the intention and for the purpose of influencing his action as such officer, he would be guilty under our statute. It would not be an offense against Mr. Wilson so much as an offense against the public welfare, and one which no officer would have the authority, nor power to give his consent to. Therefore, we are of the opinion that the court erred in holding that if Mr. Wilson induced appellant by his words, acts, and conduct to make a proposition to pay him so much money to influence his action as an official, and appellant did make the proposition under such circumstances he would be guilty of no offense. However, under such circumstances, Mr. Wilson would, under the rules of evidence, be held to be an accomplice and appellant could not be convicted upon his testimony alone, and the court should have instructed the jury that if Mr. Wilson made the first proposition and induced appellant to make the tender he would be an accomplice, even though he did not intend to accept the bribe, and by his acts was but seeking to entrap or detect appellant in the commission of an offense, and under such circumstances, he must be corroborated in those facts which connected defendant with the commission of the offense, if an offense had been committed.

There are several other matters complained of in the record, but we do not deem it necessary to discuss them. The court should make it plain in his charge that if appellant tendered the money to Mr. Wilson under the belief that it was to be used in paying the fine of Dilmous

Davis he would not be guilty of any offense, and he would only be guilty of an offense if he tendered the money to Mr. Wilson to influence his action as an official.

Reversed and remanded.

*Reversed and remanded.*