

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JESUS GÁNDARA a/k/a JESUS GÁNDARA, JR., | § | No. 08-15-00201-CR |
| Appellant, | § | Appeal from the |
| | § | 210th Judicial District Court |
| v. | § | of El Paso County, Texas |
| THE STATE OF TEXAS, | § | (TC# 20130D03286) |
| Appellee. | § | |

## **O P I N I O N**

This case is an example of how difficult it is to distinguish politics from bribery. Jesus Gándara was convicted of bribery for seeking public support from Licon Dairy, an influential business in San Elizario's business area to benefit the taxpayers of the City of Socorro. Gándara solicited the Licon's public support of the City of Socorro's proposed annexation of the San Elizario area in exchange for his efforts as a sitting councilmember of the City of Socorro to "mediate" or "spearhead" favorable initiatives for the dairy thereby ultimately benefitting the City of Socorro. On appeal, Gándara asserts he could not and should not have been convicted of bribery, because he neither requested nor received a pecuniary benefit while engaged in the constitutionally-protected political act of "soliciting support for an initiative that would benefit his

constituents." *See* TEX.PENAL CODE ANN. § 36.02(a)(1)(West 2011).

The State argues that Gándara committed the offense of bribery by soliciting a financial benefit, the Licons' public statements of support, which the State asserts had a "pecuniary value." Second, the State posits, the beneficiary of the alleged bribe was not Gándara, but rather the City of Socorro by generating increased tax revenue as the result of the proposed annexation. The State concludes that it cannot be disputed that Gándara had a "direct and substantial interest in the welfare of the City of Socorro . . ." and so he, too, was a beneficiary of the attempted *quid pro quo* with the Licons. We reverse and render a judgment of acquittal.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2012, the City of Socorro notified the townsfolk of San Elizario that it was proposing to annex San Elizario's business area. This area encompassed approximately twenty businesses, including the Licon Dairy, famous for its asaderos and petting zoo. The dairy was owned and operated by the following members of the Licon family: Eugenio; his wife, Sandra; and their son, Angel. The Licons were influential and well-respected in San Elizario, and, like the other business owners in town, were opposed to annexation for regulatory, financial, and historical reasons.

In January 2013, the Council of the City of Socorro convened two public meetings (of a scheduled three) to hear the public's input on the proposed annexation. Eugenio and Angel attended both meetings in the hopes of receiving more information. To their dismay, they did not.

Approximately one week after the second public meeting, Gándara contacted Sandra asking for the opportunity to talk to her and Eugenio soon. Eager for more information about the proposed annexation, Sandra agreed to meet Gándara the following evening.

2

The meeting did not take place in the Licons' home as arranged. Instead, it took place inside Gándara's van. For approximately one and one-half hours, Gándara drove Eugenio, Sandra, and Angel (who had come at Sandra's insistence) to several facilities and attractions in the City of Socorro and conversed with them about various matters, including the proposed annexation. Unbeknownst to Gándara, the conversation between him and the Licons was recorded by Eugenio on his phone.

Early on in the recording, Gándara informs the Licons he "want[s] [to] pitch to [them] an idea" but asks them to "bear with [him] a little bit" while he takes them on the afore-mentioned tour to prove to them that the City of Socorro has resources "so that way [his pitch] makes more sense." As the tour winds down, Gándara offers the Licons a "mutually beneficial compromise[.]" In return for the dairy's public support of the proposed annexation, he would "mediate" or "spearhead" "something big . . . for the Licon Dairy," such as access to water and promotional funding from the City of Socorro worth $80,000, in his role as a councilmember:

> And so anyways -- so I want to go back to -- and this is what I kind of want to talk about, if we know -- or -- or if [the annexation] is an eventuality, what can we do? How does it benefit you? And that's kind of what I wanted to talk about. And I also wanted to show you we have resources in Socorro, we're not a poor pueblito, we've got pretty good money. You know, and that's the one thing the Licon Dairy has not had is a backer, somebody who's got finances, who can promote you . . . [and] we don't have that gem which is the Licon Dairy.
>
> .            .            .
>
> But this city has money to -- to -- to promote you. You know, we can pump $40,000 into an advertisement campaign of the Licon Dairy because it's located in the city of Socorro. We can do a spring break, you know, fish thing at the pond, you know, where the first weekend is children only and the city of Socorro stocks it, we rent that location from you, we put all the money into it, we spend $40,000 on a two-weekend spring break. You know, we have those resources. If -- if you-all come into the city -- and again I have to say 'if' because we're not done with the (indiscernible), but if you-all come into the city, you know, it's the same Socorro as

3

it was three years ago.

.                    .                    .

There's a benefit.   You know, you told me, Boyd, 'If r [sic] could get my hands on that water.'

.                    .                    .

Well, darn it, let's work on getting your hands on that water.

.                    .                    .

But here's kind of what I'm – I'm pitching to you-all is that we get that the people that are being annexed don't want to do it.

.                    .                    .

[A]nd this is what I'm proposing -- we figure something out, you know, and it would be a mutually beneficial compromise which is that -- which is basically, you know, the Licon Dairy would have to say something like, you know, we want to be annexed by the city of Socorro because of whatever reasons you want to give, the resources they can give.

And the city of Socorro, in turn, because at this time it'd be great to have somebody you know, let's talk honestly, say, you know, they want to be annexed by the city of Socorro.   The city of Socorro -- and this is where I come in, this is kind of my mediation, we get something big out of it for the Licon Dairy.   You know, five months from now, Boyd, if this annexation goes through, we're not at the same level and now you're just paying more property taxes.   Instead, you have this great relationship with the city of Socorro that's – that's putting billboards on I-10, that's putting signs up, you know, at the Clint cutoff, saying . . . .

.                    .                    .

You know, so there's -- and that's kind of what I want to talk to you about is -- is -- you don't have to make decision now, but We're [sic] getting close to it and I'd love to mediate that all for you if -- if you are interested.

.                    .                    .

[A]nd like I said earlier, I would never propose this to anybody else and it's -- and it's not a bribe.   The Licon Dairy is a wonderful asset and if the Licon Dairy did something beforehand -- and I don't speak for the council, but I do speak for myself and I can speak for myself and what I can say is that I would spearhead these

4

projects and the ammunition I would have would be 'look at what they've done for us.'

The Licons did not accept Gándara's offer.

The recording was copied to a compact disc and given to the attorney hired by the Licons and other business owners to fight the proposed annexation.[1] After the recording was turned over to law enforcement, Gándara was indicted on one count of bribery in violation of Section 36.02 of the Texas Penal Code. The indictment charged Gándara with:

> [I]ntentionally and knowingly solicit[ing] a benefit . . . from Licon Dairies, to wit: public support for the City of Socorro's proposed annexation of San Elizario as consideration for the defendant's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, to wit: a city councilmember for the City of Socorro.

At trial, the State's evidence consisted of the recording and the Licons' testimonies. Although the entire recording was played for the jury's benefit, albeit in pieces, during Eugenio's testimony, only certain snippets of it were played during Sandra's testimony. Each of the Licons testified they considered Gándara's offer a bribe. Angel told Gándara "all this sounds like a bribe to me." At which point, Gándara immediately stopped the car in the middle of the road and responded this is "not a bribe." Mr. Eugenio Licon stated that Gándara assured his son, Angel, that "everything would be legal, everything would be aboveboard[.]" Gándara also explained to Mr. Licon that he was reaching out to the business community. When pressed by the State as to how Angel defined bribery, he said "a bribe is when somebody offers . . . in exchange for their part[], either money or benefits."

During the drive, Sandra Licon asks Gándara how the annexation of San Elizario would benefit the Licons. Gándara responds by touring the City of Socorro with the Licons, showing

---

[1] San Elizario was incorporated shortly after the events made the basis of the indictment against Gándara to avoid further annexation attempts from the City of Socorro.

them the paved streets and sidewalks, the police station, discussing the possibility of a paid fire department and additional water rights for the farmers. Gándara told them that a Port of Entry may be placed in San Elizario and a Riverwalk built along with a telescope like the McDonald Observatory, all of which would benefit Socorro and San Elizario. Towards the end of the tour, Gándara offers the Licons the specific benefits of the highway advertising and the spring-break fishing for the children. The State clarified that Angel understood Gándara was offering the Licons these inducements for their public support and that Gándara would persuade the other Socorro council members to obtain the promotional funding.

The State in closing argument argued the Licons' public support for the annexation would, if the annexation effort was successful, increase taxes and the tax base so, therefore, the Licons' public support was a pecuniary gain or advantage. Further, the benefit was not required to be paid directly to Gándara, but could "go to another person." The other person according to the State was the City of Socorro. The State asserted that if the Licons had gone to Gándara and offered their public support in exchange for the promotional advertising that would not be considered a bribe. However, the State urged that Gándara's private offer to the Licons, in a van late at night, along with his request to keep the agreement secret turned this attempted *quid pro quo* into a bribe that benefitted the City of Socorro. Gándara's failure to put the agreement in writing and the behind the scenes negotiations as opposed to being out in the open, posited the State, further demonstrated Gándara's intent to commit bribery.

After the State rested, Gándara moved for a directed verdict arguing that he could not be convicted of bribery because the State failed to prove "public support falls within the definition of benefit under the penal code." A lengthy discussion then ensued between the State and the trial

court concerning the State's theory of the case. Relevant for our purposes are the following colloquies concerning the notion of public support as a pecuniary benefit:

> [TRIAL COURT]:   But how is that pecuniary gain or advantage?
>
> [PROSECUTOR]:   Because one, Your Honor, he places a value on it. And he says to the Licons, It would be great to have somebody like you come out; it would be a mutually beneficial compromise. So in that statement and in that arrangement, he has placed a value on it of at least $80,000 because in exchange, in this mutually beneficial compromise, he says that their public support is worth $40,000 for advertising, $40,000 for a fishing weekend.
>
> .                .                .
>
> [TRIAL COURT]:   But the benefit is pecuniary gain or advantage to that individual. You're saying that because he's acting as a city council member in the City of Socorro who's going to benefit by the annexation is just like the City El Paso benefits from the annexation of any property.
>
> [PROSECUTOR]:   Well, I agree, Your Honor. There's two ways that the public support is a pecuniary advantage to the City of Socorro. One is, first of all he has placed a value on it. He said it's worth this much when he went and offered the Licons $80,000 and more for it. And he described it as a mutually beneficial compromise. So he is saying that that public support is worth what I'm offering for it. Now, he is saying that, Your Honor. He is placing that value on it. And then he directly ties it to the annexation, which is going to result in taxes –
>
> [TRIAL COURT]:   Which again begs the question, if you're going to interpret it that way, then he's offering a benefit.
>
> [PROSECUTOR]:   No, he's asking for – the benefit, the thing he's asking for, Judge, is the public support. He is asking for public support. The public support is the benefit. He valued their public support.
>
> [TRIAL COURT]:   How is it –
>
> [PROSECUTOR]:   He valued their public support at $80,000, Your Honor. He said, Your public support is worth $80,000 to the City of Socorro. I'm going to offer you 40,000 for advertising and I'm going to offer you 40,000 for fishing.
>
> [TRIAL COURT]:   I'm offering.
>
> [PROSECUTOR]:   Well, in the context of valuing it, Your Honor. But he says,

7

I'm asking for the public support, I'm soliciting. And so –

[TRIAL COURT]: In exchange for your public support, I'm offering so much.

[PROSECUTOR]: Yeah, I'm offering my decision or vote –

[TRIAL COURT]: I'm offering to get you 40,000, whatever.

[PROSECUTOR]: Yes, sir. So when he does that –

[TRIAL COURT]: So he's offering a benefit.

[PROSECUTOR]: He's offering the 40,000, but he's asking for the public support. Please give me your public support. In exchange for it, I will give you my discretion to get $40,000. That's what the statute prohibits. The statute says when you go out and ask for this benefit -- please give your public support. In exchange for that public support, I'm going to give you my decision or vote.
Now, my decision or vote, I'm going to go and ask for 40,000 for this and 40,000 for that and water. But under the terms of the statute, it was, I solicited, I asked for your public support and in exchange for that, I'm going to give you my influence on city council. And that's what the statute says. You violate the statute when you solicit the benefit as consideration for your decision, vote, influence as a public servant.

[TRIAL COURT]: I solicit a benefit being pecuniary gain or advantage.

[PROSECUTOR]: Yes, sir.

.          .          .

[TRIAL COURT]: The pecuniary gain or advantage.

[PROSECUTOR]: Well, the pecuniary gain, Your Honor, is one, the public support is valued, in his estimation, at least $80,000. Plus he's tied it directly to the annexation. The annexation is going to be worth much more than that to the City of Socorro. It's going to allow them to tax, property tax and sales tax all of those businesses.
He indicates on the recording that they're going to put in a port of entry and they're going to develop that land. That's going to make all of that worth a lot of money. That's a pecuniary gain or a pecuniary advantage.

[TRIAL COURT]: To the community.

[PROSECUTOR]: Yes, to the City of Socorro.

8

[TRIAL COURT]:  I mean, but that happens on a daily basis in any decision made by any official that's on a council, on a city, a municipality or a county commissioners, state, you know, legislative body or agency.

[PROSECUTOR]:  Well, but in this situation, Your Honor, the circumstances are that this city council member from the City of Socorro is trying to use his influence to beat out the town and to improperly defeat the town of San Elizario.  They want to annex and the people in San Elizario do not want to be annexed.  They're talking about filing a lawsuit.

He talks on the tape about the county filing a lawsuit.  He is trying to avoid all of that process. He is trying to avoid all of that by getting their public support because there has been evidence, Your Honor, that the annexation did not occur.  It did not occur.

[TRIAL COURT]:  So the solicitation is public support?

[PROSECUTOR]:  Yes, sir. And there's evidence that that is a benefit.

Although the trial court was not entirely convinced a criminal act had occurred under the State's broad interpretation of the bribery statute, it nonetheless denied the motion for directed verdict.

In his closing arguments, Gándara repeatedly argued to the jury that no crime had been committed because the benefit alleged to have been sought by him—the Licon Dairy's public support for the proposed annexation—had no pecuniary value.  The Licon Dairy's public support for the proposed annexation, according to Gándara, was merely an opinion sought by him in furtherance of a political initiative and an opinion from which he did not personally benefit in a monetary sense.  The jury, however, was not swayed by Gándara's argument, finding him guilty of bribery and sentencing him to 10 years' imprisonment, probated for 10 years.

Gandara raises two issues on appeal.  In his first issue, he claims "the trial court should have granted the motion for directed verdict because the evidence proved that [he] did not bribe the Licons."  In his second issue, he maintains his conviction "must be reversed because it violated his rights to free speech and to engage in political activity guaranteed by the United States and

9

Texas Constitutions."

## SUFFICIENCY OF THE EVIDENCE

In his primary issue, Gándara contends he was entitled to a directed verdict for two reasons. The first is because "Section 36.02 does not prohibit an elected official from soliciting public support for an initiative that benefits his constituents."[2] The second is because, "even if [we] find[] [Section] 36.02 encompasses [his] actions, the evidence was not sufficient for a reasonable jury to find him guilty. . . ."

### *STANDARD OF REVIEW*
*Sufficiency*

In claiming that his conduct does not constitute an offense under Section 36.02, Gándara is raising a sufficiency argument grounded in statutory construction. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex.Crim.App. 2015). Gándara's primary complaint of the trial court's overruling of his motion for directed verdict is a challenge to the legal sufficiency of the evidence supporting the conviction. *McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim.App. 1997), *citing Cook v. State,*

---

[2] The State contends Gándara's assertion that his conduct does not constitute an offense under Section 36.02 "is essentially a claim that the indictment in this case, by alleging the *actus reus* of soliciting public support for a government initiative, failed to allege a bribery offense." Thus, according to the State, Gándara's assertion "is more-properly shown to be a challenge to an alleged substantive defect in the bribery indictment itself, and because he failed to timely raise any such challenge before trial, he failed to preserve this complaint for appellate review." *See* TEX.CODE CRIM.PROC.ANN. art. 1.14(b)(West 2005)(failure to object to a substantive defect in an indictment before the date of trial forfeits the right to complain about the alleged defect).

In support of its contention that Gándara waived appellate review of his assertion that his conduct does not constitute an offense under Section 36.02 by not attacking the indictment for failure to allege a crime, the State relies on *Smith v. State,* 959 S.W.2d 1 (Tex.App.--Waco 1997, pet. ref'd). There, the court concluded that the appellant waived the right to complain of any alleged defect in the indictment by failing to file his motion to quash the indictment until the date of trial. *Id.* at 9. In so concluding, the court refused to address the appellant's complaint that the evidence was legally insufficient to prove he committed an offense at all because the argument in support of this complaint was the same ones urged by him in his complaint that the trial court erred in overruling his motion to quash the indictment-complaint. *Id.* at 9. The court did not expressly hold, as the State suggests, that "labeling a complaint as a sufficiency-of-evidence challenge does not insulate it from the error-preservation requirements of art. 1.14(b) if the complaint . . . is actually that the indictment failed to allege an offense." Here, Gándara's complaint is that the evidence is legally insufficient because the State failed *to prove* the existence of a *quid quo pro* exchange *benefitting him* as required by Sections 36.02 and 36.01, not that the indictment is defective for failing to allege bribery.

10

858 S.W.2d 467, 469-70 (Tex.Crim.App. 1993); *Canales v. State,* 98 S.W.3d 690, 693 (Tex.Crim.App. 2003). This requires the Court to view all of the evidence in the light most favorable to the verdict and then determine whether any rational trier of fact could have found this element of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App. 1989); *Brooks v. State,* 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and applying *Jackson v. Virginia* as the only standard in Texas). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex.Crim.App. 2009).

In conducting our review, we must recognize and respect that the jury is the sole judge of the weight and credibility of witness testimony, and it is the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). On appeal, we presume that the jury resolved any conflicts in the evidence in favor of the verdict and, so long as such resolution is rational, we defer to that resolution. *Brooks,* 323 S.W.3d at 894-95; *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793.

### *Historical Perspective of Bribery*

We turn to an examination of the cases involving bribery. The Texas Court of Criminal Appeals recently cited examples of bribery as "seeking the dismissal of a traffic ticket or prosecution for a family member or the seeking of a pay raise for oneself all involve attempts to obtain a personal benefit." *Ex parte Perry,* 483 S.W.3d 884, 912 (Tex.Crim.App. 2016). The

11

Court noted that "bribery is also proscribed by the Texas Constitution, which articulates the elements of that offense." *Id.* at 914. "Obtaining a personal benefit is a constitutionally required element of bribery . . . ." *Id.*[3]

The State declares that "it cannot be disputed that Gándara, as an elected member of the Socorro City Council, had a direct and substantial interest in the welfare of the City of Socorro . . . ." In support, the State cites to the Texas Constitution, asserting that "A public official is the servant of the people. It is his first duty to impartially protect and further their interests . . . ." TEX.CONST. art. 16, § 41 Interp. Commentary (1993 Main Volume). The Commentary in full is as follows:

> Bribery may be defined generally as the voluntary giving or offering to, or the acceptance by, any public officer or official, of any sum of money, present, or thing of value, to influence such officer or official in the performance of any official duty required of him, or to incline him to act contrary to known rules of honesty and integrity.
> Among ancient peoples, and even among Romans, the giving of rewards and emoluments to public officers, especially judicial officers, was tolerated and even encouraged; without such inducements no audience could be had. A later age apprehended the danger of such custom; hence the fiat of the common law against it.

---

[3] Section 41:

> Any person who shall, directly or indirectly, offer, give, or promise, any money or thing of value, testimonial, privilege or personal advantage, to any executive or judicial officer or member of the Legislature to influence him in the performance of any of his public or official duties, shall be guilty of bribery, and be punished in such manner as shall be provided by law. And any member of the Legislature or executive or judicial officer who shall solicit, demand or receive, or consent to receive, directly or indirectly, for himself, or for another, from any company, corporation or person, any money, appointment, employment, testimonial, reward, thing of value or employment, or of personal advantage or promise thereof, for his vote or official influence, or for withholding the same, or with any understanding, expressed or implied, that his vote or official action shall be in any way influenced thereby, or who shall solicit, demand and receive any such money or other advantage, matter or thing aforesaid for another, as the consideration of his vote or official influence, in consideration of the payment or promise of such money, advantage, matter or thing to another, shall be held guilty of bribery, within the meaning of the Constitution, and shall incur the disabilities provided for said offenses, with a forfeiture of the office they may hold, and such other additional punishment as is or shall be provided by law. Tex.Const. art. XVI, § 41.

12

A public official is the servant of the people. It is his first duty impartially to protect and further their interests, and he should not be permitted to profit through the performance of his public functions. The spirit of any democratic government is utterly abhorrent from anything which tends to corruption in the representatives of the people, or threatens the purity of the administration of government. And as wealth and power may become powerful forces in a dangerous direction, the protection of equal rights among the people demands that a severe penalty be visited upon any member of the community who offers or gives a bribe, and also upon any representative who receives or offers to receive an inducement to official action.

All the constitutions of Texas had provisions on bribery, but the provision in the present constitution is the most detailed. According to contemporary reports, there were two reasons underlying its length, one, the corruption of the reconstruction government; and two, the fact that lobbyists for the railroad interests were much in evidence around the doors of the convention and these lobbyists were not hesitant in efforts to tempt the makers of the constitution.

Texas case law is replete with examples in which a government official is charged with accepting a financial gain in exchange for a wrongful exercise of his governmental duties. In *Davis v. State*, Sheriff Davis accepted money in exchange for ignoring and not investigating individuals manufacturing whiskey. 101 Tex.Crim. 243, 247-248, 275 S.W. 1060, 1062 (1925). In *Selvidge v. State,* Selvidge paid $200 to Sheriff Sanders to permit the transportation of intoxicating liquors in violation of the Sheriff's duty. 126 Tex.Crim. 489, 490, 72 S.W.2d 1079, 1079-80 (1934). The *Selvidge* court characterized bribery as an offense in which a public official for a valuable reward agrees to refrain from performing his official duties or corruptly perform his duties contrary to the law. *Id.* In *Roseman v. State,* the appellant was convicted of bribing a police officer with $20 so as to refrain from being arrested for gaming and liquor law violations. 382 S.W.2d 261, 263 (Tex.Crim.App. 1964). In *McClelland v. State,* Probate Judge McClelland was found to have accepted bribes from five individuals in exchange for appointing those individuals as appraisers, administrators, and guardians in the Probate Court. 390 S.W.2d 777, 778-79 (Tex.Crim.App. 1965). In *Bates v. Texas,* Judge Bates was convicted of bribery by

13

accepting money in exchange for a defendant sentenced in his court to probation. 587 S.W.2d 121, 125-27 (Tex.Crim.App. 1979). The *Bates* Court noted that "'[T]he inequity of the procuring of public officials, be it intentional or unintentional, is so fatally destructive to good government that a statute designed to remove the temptation for a public official to give preferment to one member of the public over another, by prohibiting all gifts 'for or because of an official act,' is a reasonable and proper means of insuring the integrity, fairness and impartiality of the administration of the law." *Id.* at 128, *citing U.S. v. Irwin,* 354 F.2d 192, 196 (2nd Cir. 1965). In a second *McCallum* case, the court described the effect of bribery is to "'subvert the function of government to the advantage of the few who can or will pay for special advantages, but more important is the lack of confidence in government which such practices cause.'" *McCallum v. State,* 686 S.W.2d 132, 133-34 (Tex.Crim.App. 1985)(citing Explanatory Comment in Branch's Ann.P.C., 3rd Ed., Vol. III, § 36.02, V.T.C.A., Penal Code § 36.02 (1974)).

The *Davis* court defined bribery as an offense that had "'the tendency . . . to prevent justice in any of the governmental departments-executive, legislative, or judicial.'" *Davis v. State,* 70 Tex.Crim. 524, 528, 158 S.W. 288, 289 (1913). The *Cox* Court defined bribery thus:

> Bribery comes to us from the common law, and consists of the prostitution of a public trust. It is a betrayal of public interest, and a debauchment of the public conscience.
>
> .         .         .
>
> In addition to our statutes upon the subject, our founding fathers wrote into the Constitution of this state a prohibition against bribery by the officers of this government and therein decreed that it was a violation of the Constitution for an officer of this state to solicit or consent to accept a bribe. Art. 16, Sec. 41, Const. of Texas, Vernon's Ann.St.

14

*Cox v. State*, 166 Tex.Crim. 587, 591, 316 S.W.2d 891, 893-94 (1958). The dissent in *Cary v. State,* declares that bribery involves "quid pro quo of paying a public servant so that the recipient will make decisions desired by the payor . . . ." No. 05-12-01421-CR, 2014 WL 4261233, at \*43 (Tex.App.--Dallas Aug. 28, 2014, pet. granted)(not designated for publication). Further, "bribery addresses graft and corruption." *Id.* at \*43.

In *Hubbard v. State,* the conviction of bribery was upheld when the appellant, a heroin distributor, offered and paid a police officer for providing information as to when his heroin dealers were to be raided. 668 S.W.2d 419, 420 (Tex.App.--Dallas 1984), *remanded on other grounds,* 739 S.W.2d 341 (Tex.Crim.App. 1987). The *Hubbard* Court, stated that bribery is "the conferring of a benefit upon a public servant as consideration for violation of one of his duties . . . ." *Id.* at 420. The *Hubbard* Court further noted that the bribery offense focuses on the mental state of the actor. *Id.* at 421. *Ex parte Maddox,* a commercial bribery case, the court stated that when one lawyer offers another lawyer an "economic benefit in consideration for the latter's breach of a fiduciary duty owed to a client . . . is bribery." 683 S.W.2d 93, 98 (Tex.App.--Austin 1984, pet. ref'd). The *Martinez* Court upheld the conviction of a police officer who accepted $150 in lieu of issuing traffic citations. 696 S.W.2d 930, 933 (Tex.App.--Austin 1985, pet. ref'd). In *Gahl v. State,* appellant, the Dallas Chief Building Official, was convicted of bribery when he accepted $15,741.44 from an architect in exchange for the approval of a condominium project. 721 S.W.2d 888, 890 (Tex.App.--Dallas 1986, pet. ref'd). The *Gahl* Court also ratified *Hubbard's* definition of bribery as "the conferring of a benefit upon a public servant as consideration for violation of one of his duties." *Id.* at 893.

15

In *Mustard v. State,* the appellant agreed to pay a deputy marshal $400 dollars for the city's computer access codes in order to dismiss tickets, cancel warrants, and enter judgments of not guilty. 711 S.W.2d 71, 73-74 (Tex.App.--Dallas 1986, pet. ref'd). In *Tweedy v. State,* the appellant was convicted of bribery when he offered to pay $200 to a city construction inspector if the inspector would refrain from inspecting his company's work. 722 S.W.2d 30, 31 (Tex.App.--Dallas 1986, pet. ref'd). In *Bush v. State*, the appellant was indicted for bribery when he offered and paid $49,999.00 for a probated sentence to the brother of the district attorney of his case. 722 S.W.2d 41, 43-44 (Tex.App.--Eastland 1986), *affirmed*, 773 S.W.2d 297 (Tex.Crim.App. 1989). In *Cerda v. State,* a municipal court bailiff was convicted of bribery when he agreed to destroy the records of two traffic citations in exchange for a pecuniary benefit. 750 S.W.2d 925, 927 (Tex.App.--Corpus Christi 1988, pet. ref'd). Appellant, a county sheriff, was convicted of bribery when an associate of his offered the job of deputy sheriff in return for the withdrawal, from the run-off, of his political opponent in the primary. *Kaisner v. Texas,* 772 S.W.2d 528, 528-29 (Tex.App.--Beaumont 1989, pet. ref'd). In *Lima v. State,* the appellant was convicted of bribery, when he secured a loan which was payable to the city inspector, who was responsible for overseeing the contract work appellant performed for the city, which later showed the work had not been completed. 788 S.W.2d 629, 630 (Tex.App.--Texarkana 1990, pet. ref'd). In another commercial bribery case, the appellant was convicted for bribery by acquiring plans of specialized machinery parts from his employer and sending them to a third-party manufacturer who paid him for these plans. *McGowan v. State,* 938 S.W.2d 732, 733 (Tex.App.--Houston [14th Dist.] 1996, pet. granted).

16

In *Watts v. State,* appellant, the mother of an inmate in the Texas Department of Criminal Justice, was convicted of a bribery in which she assisted in the transfer of funds to a correctional officer who illegally provided phones to inmates. No. 09-11-00383-CR, 2012 WL 403859, at *1 (Tex.App.--Beaumont Feb. 8, 2012, no pet.)(mem. op., not designated for publication). In *Reyes v. State,* the appellant was found guilty of bribery when he offered to pay a correctional guard in the county jail to smuggle a phone charger into the facility. No. 13-09-00321-CR, 2010 WL 2783747, at *1 (Tex.App.--Corpus Christi July 15, 2010, no pet.)(mem. op., not designated for publication). In *Wesson v. State,* the appellant's conviction for bribery was upheld when she accepted $1,000.00 from a taxpayer and issued a refund check to him of $7,183.71 when he owed $14,465.86 in back taxes. No. 12-06-00205-CR, 2008 WL 2221812, at *1-2 (Tex.App.--Tyler May 30, 2008, no pet.)(not designated for publication). The *Wesson* Court explained "the offense of bribery is the conferring of a benefit upon a public servant as consideration for her discretion being improperly applied." *Id.* at *5. The *Wesson* Court citing *Cox,* stated that "the public places its trust in governmental officials with the expectation that they will exercise the discretion given to them to benefit the citizenry. When that discretion is perverted by a bribe that results in special treatment of one citizen, public trust is corrupted and corroded." *Id., citing Cox,* 316 S.W2d. at 894.

In *Smith v. State,* the court, in a gift by a public servant case, closely examined the definition of benefit in which the appellant, an employee of Texas A & M, and his wife travelled to New York so that he could sign the contract extension between the university and Barnes & Noble. 959 S.W.2d 1, 7 (Tex.App.--Waco 1997, pet. ref'd). The evidence showed that appellant solicited the transportation costs, meal, lodging, and theater tickets for him and his wife that

Barnes & Noble provided at no cost. *Id.* The Court found that the food, lodging, transportation, and entertainment constituted "benefits" under Section 36.01(3). *See* TEX.PENAL CODE ANN. § 36.01(3)(West 2011).

In *Valencia v. State,* the court wrestled with the definition of bribery when a then sitting county commissioner promised a vote for the appointment of constable to two applicants if they in turn agreed to hire two specific individuals. No. 13-02-020-CR, 2004 WL 1416239, at *1 (Tex.App.--Corpus Christi June 24, 2004, pet. ref'd). The *Valencia* Court struggled with the definition of pecuniary gain, eventually arriving at the conclusion that the constable's salary of $34,800 was a pecuniary gain offered by Commissioner Valencia, through his vote, to the constable-applicants in exchange for the yet unnamed appointed constable's commitment to hire the individuals identified by Commissioner Valencia. *Id.* at *3-*4. The dissent in *Valencia* argued the benefit was lacking because Valencia's vote was not measurable and did not represent any pecuniary gain especially as his vote was only one out of three. *Id.* at *6.

### *Statutory Construction*

Gándara argues his conduct is not criminal because "there was no *quid pro quo* exchange benefitting [him]" as required by Section 36.02. Gándara acknowledges that he actively sought the Licons' public support for the annexation of San Elizario in exchange for his future recommendation to Socorro City Council to award $80,000 in promotional funding to the Licon Dairy. Gándara correctly asserts that Section 36.02 does not require the person who solicits the benefit to ultimately be the beneficiary, but he maintains the public servant must benefit from the exchange. Thus, he concludes the benefit, that is, the public support by the Licons, inures to the City of Socorro and its citizens not Gándara personally and therefore, his conduct does not fall

18

within the purview of Section 36.02.

Further, to permit a conviction for bribery under such circumstances, according to Gándara, "unreasonably equates public support with pecuniary gain." Gándara contends that his conviction must fail because the definition of "benefit" under Sections 36.01(3) and 36.02(a)(1) cannot possibly encompass "public support." Gándara claims the "*quid pro quo* requirement" of Section 36.02 is read out of the statute if a government official attempts to solicit public support for the greater good of his constituency, which is construed as benefit to him. Under that interpretation, he declares, many elected government officials are subject to prosecution for bribery.

Questions of statutory construction are questions of law subject to *de novo* review. *Liverman,* 470 S.W.3d at 836. The overarching rule of statutory construction is to ascertain legislative intent by giving effect to the plain meaning of the statutory language unless doing so leads to absurd results that the legislature could not possibly have intended. *Id.* Further, we presume that every word has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. *Id*.

Section 1.05(a) instructs us not to strictly construe the statute in question, but rather "according to the fair import of their terms, to promote justice and effect the objectives of the code." TEX.PENAL CODE ANN. § 1.05(a)(West 2011). However, if a different construction is required by the context, we apply the Code Construction Act. *Id.* at § 1.05(b). The Code Construction Act further requires us to read words and phrases "in context" and construe in accordance with "the rules of grammar and common usage." TEX.GOV'T CODE ANN. § 311.011(a)(West 2013). However, words and phrases that have "acquired a technical or

19

particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id.* at § 311.011(b). *See Daniels v. State,* 754 S.W.2d 214, 219 (Tex.Crim.App. 1988)(noting that, when words are not defined, they are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense); *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. 1979)(stating that, in the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices or construed in the sense generally understood).

### *Applicable Law*

The current version of Section 36.02 is patterned after the Model Penal Code promulgated in 1962 by the American Law Institute. *McCallum v. State*, 686 S.W.2d 132, 134-35 (Tex.Crim.App. 1985)(en banc); Albert W. Alschuler, *Criminal Corruption: Why Broad Definitions of Bribery Make Things Worse*, 84 FORDHAM L. REV. 463, 472 (2015). Under the Model Penal Code, bribery is defined as "offering, giving, soliciting, or accepting a pecuniary benefit as 'consideration' for an official act." Alschuler*, Criminal Corruption*, at 472, *citing* 51 Model Penal Code § 240.1(1)(Am. Law Inst., Proposed Official Draft 1962).

Under Section 36.02, bribery is defined, in pertinent part, as:

[I]ntentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

> (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter[.]

TEX.PENAL CODE ANN. § 36.02(a)(1)(West 2011). Implicit in Section 36.02 is the requirement of a *quid pro quo*; that is, an agreement to exchange *any benefit* for the *exercise of discretion as a public servant*. *See Isassi v. State*, 330 S.W.3d 633, 644 (Tex.Crim.App. 2010); *McCallum*, 686

20

S.W.2d at 136.

For purposes of Section 36.02, the term "benefit" has a specialized meaning. *Ex parte Perry*, 483 S.W.3d 884, 912 n.168 (Tex.Crim.App. 2016). It means:

> [A]nything reasonably regarded as pecuniary gain or pecuniary advantage, including *benefit to any other person in whose welfare the beneficiary has a direct and substantial interest*. [Emphasis added].

*Id.*, *citing* TEX.PENAL CODE ANN. § 36.01(3)(West 2011). The term "pecuniary" is not statutorily defined but is commonly understood to mean either "consisting of or measured in money" or "of or relating to money." Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 912 (2003).

Like the term "benefit," the term "person" has a specialized meaning for purposes of Section 36.02. *See* TEX.PENAL CODE ANN. § 1.07(38)(West Supp. 2016). A person is not only an individual but also a government, including a municipality. *See* TEX.PENAL CODE ANN. § 1.07(6), (24), (38).

The phrase "direct and substantial interest" is likewise not statutorily defined. Therefore, this phrase must be given its common meaning. *Daniels,* 754 S.W.2d at 219. The term "direct" means from "point to point without deviation" and "marked by an absence of an intervening agency, instrumentality, or influence." Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 353. Webster's Third New International Dictionary 640 (Unabridged Ed. 2002), defines "direct" in part as "transmitted back and forth without an intermediary."

"Substantial" is defined as "not imaginary or illusory," and "significantly great" or "essential." Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 1245. Webster's Third New International Dictionary (Unabridged), describes "substantial" as "constituting substance" and "considerable in amount, value, or worth."

Therefore, we conclude, "direct and substantial interest," means the beneficiary's interest in the welfare of the other "person" cannot be unbroken by any intermediary or agency, and not speculative or illusory, but of a considerable value.

The indictment charged Gándara with:

[I]ntentionally and knowingly solicit[ing] a benefit . . . from Licon Dairies, to wit: public support for the City of Socorro's proposed annexation of San Elizario as consideration for the defendant's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, to wit: a city councilmember for the City of Socorro.

While the application paragraph in the jury charge was as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the Defendant, JESUS GANDARA AKA JESUS GANDARA, JR., on or about the 25th day of January, 2013, in EL Paso County, TX, did then and there, intentionally or knowingly, solicit a benefit, other than a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code, from Licon Dairies, to-wit: public support for the City of Socorro's proposed annexation of San Elizario as consideration for the defendant's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, to wit: a city councilmember for the City of Socorro, then you will find the Defendant, JESUS GANDAR AKA JESUS GANDARA, JR., GUILTY of Bribery as charged in the indictment.

The charge also defined benefit in accordance with definition codified in Section 36.01(3).

Therefore, under the statute, to convict Gándara of bribery, the State must prove that: (1) Gándara intentionally or knowingly solicited or agreed to accept from Licon Dairies; (2) a benefit, that is a pecuniary gain or advantage, to include any benefit to any other person in whose welfare Gándara has a direct and substantial interest; (3) as consideration for his opinion, recommendation, vote, or other exercise of discretion as a City of Socorro council member. If, as the State argues, "any other person" is the City of Socorro, then the question becomes, was the evidence sufficient to show Gándara had a "direct and substantial interest" in the City of Socorro? Stated another

22

way, was Gándara's interest in the welfare of the City of Socorro unbroken by any intermediary or agency, and not speculative or illusory, but of a considerable value?

*Discussion*

The question of whether the evidence is legally sufficient to convict Gándara as a beneficiary or recipient of a benefit under Sections 36.01 and 36.02(a)(1) is a novel one. Clearly, Gándara promised his vote as a public servant to procure promotional funding for the Licon Dairy in return for the Licon's public support of the annexation of San Elizario. Gándara presents two questions challenging his bribery conviction: (1) Does the public support he was soliciting from the Licons satisfy the definition of benefit, that is, pecuniary gain or advantage to the City of Socorro; and (2) Was he the recipient of any pecuniary gain or did he have a "direct and substantial interest" in the welfare of the City of Socorro under Section 36.02 (a)(1)?

Bribery is an offense that perverts the ends of good government by corruptly enriching a public servant in abusing the lawful authority bestowed upon him. As the case law amply demonstrates the benefit is bestowed upon the public servant for the exercise of his discretion in favor of the party who has paid the benefit. However, Section 36.01(3) provides that if the benefit is not directly conferred upon the public servant, but upon his proxy, that is, "to any other person in whose welfare" the public servant-recipient "has a direct and substantial interest." Obviously, this language is intended to corral surrogates for the public-servant recipient so that bribery can be prosecuted even if the benefit is directed to a family member, a partner, or a close associate.

For the purposes of our analysis, we assume without deciding that the Licons' public support possesses some pecuniary gain or advantage to the City of Socorro. States and municipalities routinely pay individuals for endorsements, for example, such as advertisements to

23

promote tourism in their city or state. The public understands these individuals are paid for their support or endorsement of those government entities. Gándara's offer of promotional funding to the Licons was akin to paying them to participate in an advertising campaign in which they publically proclaimed their support for the annexation. Thus, it is not beyond the realm of comprehension to cast the Licons' support or endorsement of the annexation of San Elizario as a pecuniary advantage. Certainly, the evidence shows that Gándara valued it at $80,000.

The State does not argue that Gándara personally stood to benefit financially from the contemplated exchange with the Licons. Neither the State nor Gándara dispute that his conduct was to promote and enhance the City of Socorro, thereby, profiting every property tax-paying citizen by increasing the city's tax base, which logically would lead to a diminution of each Socorro resident's property tax bill. However, the State presented no evidence that the City of Socorro would, in fact, actually benefit. It could equally be argued that additional expenditures to service the citizens of San Elizario would counter or overwhelm the anticipated San Elizario's property tax revenues to Socorro. Consequently, adversely impacting Socorro taxpayers, because they could pay higher property taxes than if the San Elizario annexation had not taken place. Thus, the benefit to the City of Socorro, unsupported by any evidence, renders the benefit to Gándara speculative and illusory.

Second, the benefit to the City of Socorro is tenuous at best and based on a series of stacked inferences. To conclude that the City of Socorro's purported benefit would be the direct result of the Licon's endorsement is to ignore the political reality of every San Elizario voter. While the Licons believed they were highly regarded in their community that does not automatically transfer into *fait accompli* the annexation of San Elizario. The Licons acknowledge there was stiff

24

resistance from the residents of San Elizario to the proposed annexation by the City of Socorro. The promotion of the annexation by the Licons could conceivably sway the vote, but the direct benefit to Socorro is broken by each individual voter in San Elizario.

We find that under Section 36.02(a)(1) that Gándara's interest in the City of Socorro is not direct or substantial. Gándara's interest in the City of Socorro is no more or less than any other Socorro resident. His interest is diluted by every other taxpayer in the city, which renders his interest neither direct nor substantial. Further, the benefit he would receive as the result of the increased tax base would, likewise, be no more or less than the effect upon any other taxpayer similarly situated. The State failed to prove that Gándara's interest in the City of Socorro was quantifiable to such a degree that they were nearly equal or could stand in each other's shoes. "Direct and substantial interest" for the purposes of bribery must signify an individual or entity that can stand in Gándara's stead more or less in *toto*. Gándara's interest is not substantial nor was it direct.

It is clear the policy underpinning bribery statutes is to encourage officials to act within "known rules of honesty and integrity." Tex.Const. art 16, § 41 Interp. Commentary (1993 Main Volume). Further, a public official is a "servant of the people" and his "first duty" is to impartially "protect and further their interest." *Id.* The Commentary proclaims that a public official "should not be permitted to profit through the performance of his public functions." *Id.*

Gándara's conduct was not a betrayal of the public trust, precisely because he intended to benefit the public he served. The evidence amply demonstrated that Gándara did not promise to violate any duty to his constituency in return for the Licon's public endorsement of the proposed annexation of San Elizario. Gándara explicitly refuted the Licon's claim that Gándara was

25

seeking or offering a bribe. Gándara did not promise to improperly apply his discretion in advocating for the Licon Dairy promotional funding. Gándara was intending to exercise his discretion to benefit the citizenry of Socorro in accordance with his duty as a city councilman of the City of Socorro. Our laborious recitation of Texas case law highlights that no public official has been prosecuted for a benefit to the constituency that elected him. The case law demonstrates the benefit accrued either to the official, a family member, an associate, or political opponent.

The State's argument that Gándara would have profited as a citizen of Socorro because the City of Socorro was the intended beneficiary of the *quid pro quo* cannot satisfy the statutory definition of Section 36.01. If the State was correct, every public official that furthered the interests of his constituency of which he was a member, would subject most, if not all, to prosecution for bribery. Our bribery statutes target those officials who "corruptly perform" their duties. *Selvidge*, 72 S.W.2d at 1079. Bribery was criminalized in order to insure that government officials act in what they believe are the best interest of their constituents. To indict, prosecute, and convict a public servant for bribery when the benefit goes to the very individuals it was intended to, the taxpayers, is to turn this statute upon its head. It is difficult to comprehend how a public servant may be criminally prosecuted for bribery when the purported bribe inures to his constituency.

We conclude that the evidence is legally insufficient to support the jury's finding that Gándara was to receive a benefit through another in whose welfare Gándara had a direct and substantial interest. Our disposition of this issue renders Appellant's second issue moot.

### CONCLUSION

The trial court's judgment is reversed and we render a judgment of acquittal.

26

November 16, 2016

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Publish)