

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00057-CR

Ryan Xavier **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 19-08-0206-CRA
Honorable Russell Wilson, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
            Liza A. Rodriguez, Justice
            Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: December 6, 2023

AFFIRMED

Appellant Ryan Garcia[2] challenges his judgment of conviction for aggravated assault with

a deadly weapon. He argues the trial court erred by (1) admitting extraneous offense evidence over

his objection, (2) denying his motion for directed verdict, and (3) overruling his objection to the

prosecutor's closing argument. We affirm.

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

[2] Because many trial witnesses and individuals described by trial witnesses share the surname "Garcia," we refer to Appellant Ryan Garcia as "Appellant."

## BACKGROUND

Appellant was charged with aggravated assault with a deadly weapon after he assaulted Gabriel Garcia in connection with a May 16, 2019 dispute with Gabriel Garcia's family over a stolen dog. *See* TEX. PENAL CODE §§ 22.01(a), 22.02(a)(2). A jury found Appellant guilty, and the trial court sentenced him to twelve years with the Texas Department of Criminal Justice, Correctional Institutions Division. This appeal followed.

## EXTRANEOUS OFFENSE EVIDENCE

Appellant argues the trial court abused its discretion by admitting extraneous offense evidence of four separate incidents: one occurring on April 13, 2019 and three between May 5 and May 9, 2019.

### A. Law

"We review a trial court's decision to admit or exclude extraneous offense evidence under Rules 404(b) and 403 for an abuse of discretion." *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). "Considering that the trial court has the best view of the evidence, an appellate court will uphold a trial court's ruling on admissibility so long as it is within the 'zone of reasonable disagreement.'" *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). "A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Furthermore, we must uphold an evidentiary ruling "on appeal if it is correct on any theory of law that finds support in the record," *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006), "even if the trial judge gave the wrong reason for his correct ruling," *Devoe*, 354 S.W.3d at 469.

Extraneous offense evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2).

Such evidence is also admissible as same-transaction contextual evidence which is evidence "where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others.'" *Devoe*, 354 S.W.3d at 469 (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). Same-transaction contextual evidence "illustrat[es] other aspects of an 'indivisible criminal transaction'" and "'illuminate[s] the nature of the crime alleged.'" *Inthalangsy*, 634 S.W.3d at 756 (quoting *Devoe*, 354 S.W.3d at 469 and *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993)); *see also id.* ("A jury is entitled to know all the facts that are 'blended or closely interwoven' with a continuous criminal episode." (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986))). "Yet, such same-transaction contextual evidence must be 'necessary to the jury's understanding of the offense' such that the charged offense would make little sense without the same-transaction evidence." *Inthalangsy*, 634 S.W.3d at 756 (quoting *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996)). "The standard for admission of evidence under Rule 404(b) is high: 'a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense.'" *Id.* at 757 (quoting *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008)). In other words, a trial court does not abuse its discretion in admitting such evidence if it is within the zone of reasonable disagreement, the evidence is admissible for an

acceptable purpose, and the evidence showed the defendant was responsible for the extraneous offense beyond a reasonable doubt. *See id.*

However, even if a trial court determines evidence is admissible pursuant to rule 404(b), "Rule 403 may still preclude its admission if the trial court determines that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay or needlessly presenting cumulative evidence." *Perkins*, 664 S.W.3d at 216. "The fact that an item of evidence shows the defendant in a negative light is not sufficient to justify its exclusion on Rule 403 grounds: 'Almost all evidence offered by the prosecution will be prejudicial to the defendant. Only evidence that is *unfairly* prejudicial should be excluded.'" *Inthalangsy*, 634 S.W.3d at 758 (*DeLeon v. State*, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref'd)). "Unfair prejudice refers to the evidence's 'tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged.'" *Perkins*, 664 S.W.3d at 216 (quoting *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)); *see, e.g.*, *Inthalangsy*, 634 S.W.3d at 758.

After the defendant has objected on Rule 403 grounds, the trial court must balance the following factors: (1) how compellingly the evidence serves to make a consequential fact more or less probable; (2) the evidence's potential "to impress the jury in some irrational, but nevertheless indelible way"; (3) the time needed to present "the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the proponent's need for the evidence." *Perkins*, 664 S.W.3d at 216 (quoting *Montgomery v. State*, 810 S.W. 2d 372, 389–90 (Tex. Crim. App. 1990)). We may only reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Id.* at 217 (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)) (internal quotation marks omitted). "The reviewing court, however, cannot simply conclude 'the trial court did in fact conduct the requir[ed] balancing test and did not rule arbitrarily

and capriciously.'" *Id.* (quoting *Mozon*, 991 S.W.2d at 847) (internal quotation marks omitted). We must "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made." *Id.*

### B. Analysis

Appellant argues the trial court abused its discretion in admitting evidence on four Rule 404(b) extraneous offenses and failing to provide a limiting instruction on their use. He further contends the trial court's actions were contrary to Rule 403 because there was no reference to the offenses' probative value, and the offenses were clearly prejudicial. The State contends Appellant did not preserve error as to the three May 2019 extraneous offenses. It further contends the April 13, 2019 extraneous offense and each of the May 2019 extraneous offenses were admissible under Rule 404(b) to prove motive, as same transaction contextual evidence, and to rebut Appellant's theory of self-defense. As to Rule 403, the State contends the incidents were essential to explaining Appellant's motive for the assault and rebutting his justification defense, and without being able to use the incidents to explain Appellant's motive, it would have been hard for the jury to make sense of the May 16, 2019 aggravated assault at issue. Finally, it argues Appellant never asked for a limiting instruction and, even if he had, the trial court included the submitted jury charge, mitigating any potential harm.

### 1. May 2019 Extraneous Offenses

Turning first to the May 2019 extraneous offenses, Appellant argues the State sought to introduce this extraneous offense evidence to demonstrate he was violent and adverse to authority. Appellant's counsel objected to the admissibility on the grounds each of the offenses, which occurred on May 5, 2019, May 7, 2019, and May 9, 2019, were inadmissible under Rules 403 and 404 of the Rules of Evidence. The trial court overruled each of those objections and granted Appellant a running objection.

Assuming the May 2019 extraneous offenses evidence was inadmissible under the Rules of Evidence, the admission is harmless if the erroneously admitted evidence was already received in evidence without objection either before or after the complained-of ruling. *Valadez v. State*, 663 S.W.3d 133, 147–48 (Tex. Crim. App. 2022) ("[o]verruling an objection to evidence will not result in reversal when other such evidence is received without objection, either before or after the complained-of ruling" and "error in admission of evidence may be rendered harmless when substantially similar evidence is admitted elsewhere without objection" (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) and *Washington v. State*, 485 S.W.3d 633, 638–39 (Tex. App.—Houston [1st Dist.] 2016, no pet.)) (internal quotation marks omitted); *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) ("We have often held that erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" (quoting *Leday*, 983 S.W.2d at 718)). Here, before Appellant objected, Gabriel Garcia testified to the May 5, 2019 extraneous offense, explaining Appellant threatened his father over the allegedly stolen dog. Gabriel Garcia also testified, prior to Appellant's objection, that Appellant ran his daughter—Ardis Garcia—off the road for the same reason on May 7, 2019. Finally, without objection, multiple witnesses testified to Appellant's May 9, 2019 assault on Gabriel Garcia, including Garcia himself.[3] We therefore cannot conclude Appellant was harmed by the admitted testimony regarding the three May 2019 extraneous offenses; nor can we conclude the trial court abused its discretion in overruling Appellant's objection to the admission of the extraneous offenses.[4]

---

[3] Photos of Gabriel Garcia's injuries from the May 9, 2019 assault were admitted into evidence without objection.

[4] Appellant further argues a mistrial should have been granted. A mistrial is an "extreme remedy" that "should be exceedingly uncommon" and only required when the impropriety was "'clearly calculated to emotionally inflame the jurors' minds and is of such a character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds,' or is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Griffin v. State*, 571 S.W.3d 404, 417 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (quoting *Williams v. State*, 417 S.W.3d

## 2. April 13, 2019 Extraneous Offense

Turning to the April 13, 2019 extraneous offense, immediately before Atascosa County Sheriff's Office Deputy Paul Schneider was set to testify, Appellant objected to his testimony on Rules 403 and 404 grounds; Deputy Schneider was expected to testify about the April 13, 2019 extraneous offense. The trial court overruled the objection and granted Appellant a running objection to the testimony.

Deputy Schneider proceeded to testify the Sheriff's Office was contacted by a complainant who stated Appellant had shot a vehicle multiple times on a Highway 173 property. The complainant added Appellant fled in a gold SUV, possibly heading to his girlfriend's place of employment—a Highway 97 liquor store. Appellant's girlfriend lived in a residence on the Highway 173 property and his girlfriend's sister and her boyfriend—Matthew "Turk" Garcia— lived in another. Deputy Schneider dispatched to the property a sheriff's deputy who encountered a blue 2001 GMC Sierra with multiple bullet holes and .22 caliber bullets and casings scattered near the vehicle. Meanwhile, Deputy Schneider drove to the Highway 97 liquor store and found Appellant and a gold Chevy SUV. After Deputy Schneider detained Appellant, Appellant said he had had a "run-in" with Turk. Appellant added leading to that day's events, "he had confronted Turk because . . . he believed Turk had stolen a dog and that Turk's brother had the dog." As a result, Appellant confronted Turk at his girlfriend's house, and Turk—who was there with his boss at the time—armed himself and his boss with an axe and a pipe from his truck. Appellant then told them he was going to let Turk and his boss leave that day but, if they came back, he would "finish

162, 175 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd)). The record does not show Appellant sought a mistrial, and the evidence had been already admitted prior to the complained-of testimony. Moreover, the trial court included a limiting instruction as a part of the jury charge. We therefore cannot conclude the admission of the extraneous offenses Appellant objected on Rule 404(b) and 403 grounds was clearly calculated to emotionally inflame the jurors' minds or so prejudicial that further time and expense would be wasteful and futile. *See id.*

this." On the morning of April 13, 2019, Appellant saw Turk and his boss on the Highway 173 property and "took a .22, went over there and . . . shot the truck multiple times" because they were "trespassing and he was defending his property rights." At the time he shot at the truck, Turk and his boss were not inside it. Deputy Schneider also secured the scene and searched the gold SUV for a firearm, but he did not find one.[5]

The indicted offense—the May 16, 2019 aggravated assault with a deadly weapon— required proper context to be understood by the jury. *See Inthalangsy*, 634 S.W.3d at 757. The evidence showed Appellant confronted Turk because he believed he had stolen his dog, and the confrontation ultimately resulted in Appellant firing bullets at Turk's truck. *See Devoe*, 354 S.W.3d at 469. The evidence also showed Appellant's motive—the alleged dog theft—which also motivated the May 16, 2019 aggravated assault on Gabriel Garcia—Turk's brother. *See* TEX. R. EVID. 404(b)(2) (providing evidence may be admissible to prove motive); *Phillips v. State*, 534 S.W.3d 644, 653 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("The Court of Criminal Appeals has held that, although the existence of a motive for the charged offense is not essential to secure a conviction, 'the presence or absence of a motive for a crime is obviously a factor that is related to the question of the defendant's guilt or innocence,' and therefore proof of motive is generally admissible." (quoting *Knox v. State*, 934 S.W.2d 678, 682 n.10 (Tex. Crim. App. 1996))). Moreover, Appellant left the scene in a gold Chevy SUV, the same SUV he used during the May 16, 2019 assault. *See Devoe*, 354 S.W.3d at 470 (concluding evidence was contextual evidence where extraneous offense involved blue truck later used in crime at issue). The April 13, 2019 incident therefore provides important context to Appellant's aggravated assault on Gabriel Garcia

---

[5] According to Deputy Schneider, Appellant initially agreed to provide the firearm to authorities, but later declined, stating it belonged to his girlfriend. The firearm was never recovered.

and would not make much sense without it. *See Inthalangsy*, 634 S.W.3d at 757; *Devoe*, 354 S.W.3d at 470. It is therefore within the zone of reasonable disagreement to find both that (1) the April 13, 2019 extraneous offense evidence showed motive and provided necessary context to a continuing course of conduct including the crime charged in the indictment in this case—the May 16, 2019 aggravated assault with a deadly weapon—and (2) Appellant was responsible for the April 13, 2019 extraneous offense beyond a reasonable doubt.

Turning to our review of "the trial court's ruling against the relevant criteria by which a Rule 403 decision is made," the April 13, 2019 incident's probative value tends to make it more probable than not Appellant assaulted Gabriel Garcia on May 16, 2019 because of the allegedly stolen dog. *See Perkins*, 664 S.W.3d at 217. This factor weighs heavily in favor of admission. As to the second factor, the evidence's potential to impress the jury irrationally, the evidence might have had that effect by leading the jury to believe Appellant had a propensity for violence. However, there is no reason to think it would irrationally impress the jury more than the detailed evidence showing Appellant assaulted Gabriel Garcia at his home on May 16, 2019. *See Inthalangsy*, 634 S.W.3d at 758–59. Moreover, no photographic evidence was presented to the jury regarding the April 13, 2019 offense. Finally, there is little risk of jury confusion as to whether Appellant was on trial for the May 16, 2019 aggravated assault, which involved a metal object and an assault on a person, as opposed to the April 13, 2019 extraneous offense, which involved a firearm and property damage. *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (explaining factor concerns nature of offense). This factor weighs in favor of admission.

The State also did not spend a great deal of time on the testimony. Only two of the seventeen witnesses provided testimony on the extraneous offense, and the testimony made up less than ten percent of the trial transcript. *See Inthalangsy*, 634 S.W.3d at 759. In the transcript of the State's closing argument, the incident was discussed in approximately two paragraphs of a twenty-

five-page closing argument by two prosecutors. *See id.* Moreover, the jury charge included a limiting instruction for the extraneous offense evidence. This factor weighs in favor of admission.

The State's need for the evidence was low. On the one hand, the State already had ample evidence of the May 16, 2019 aggravated assault. On the other hand, Deputy Schneider's testimony explicitly provided Appellant's motive—the stolen dog. Without those statements strengthening the State's case, the State would have had to rely on the testimony of others regarding what they knew about the dog dispute. This factor is neutral. On balance, we cannot conclude the trial court erred by finding the probative value of the evidence of the April 13, 2019 extraneous offense was substantially outweighed by the risk of unfair prejudice.

Because the trial court's admission of the April 13, 2019 extraneous offense under Rule 404(b) is within the zone of reasonable disagreement and because we cannot conclude the trial court erred by finding the probative value of the evidence was substantially outweighed by the risk of unfair prejudice, we cannot conclude the trial court abused its discretion by admitting evidence of the April 13, 2019 extraneous offense.[6]

## DIRECTED VERDICT

Appellant argues the evidence was insufficient to support his guilt, and the trial court therefore abused its discretion in overruling defense counsel's motion for directed verdict. Specifically, he contends the State presented legally and factually insufficient evidence to prove Appellant (1) used a deadly weapon and (2) committed the aggravated assault intentionally, knowingly, or recklessly.

---

[6] Because we conclude the admissibility of the April 13, 2019 extraneous offense evidence was within the zone of reasonable disagreement, we need not consider the State's argument the evidence was admissible to rebut Appellant's self-defense theory. *See* TEX. R. APP. P. 47.1.

### A. Law

"We review a challenge to a trial court's denial of a motion for directed or instructed verdict as a challenge to the legal sufficiency of the evidence." *Warren v. State*, 614 S.W.3d 441, 445 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). *See generally Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (concluding no meaningful distinction between legal and factual sufficiency standards and holding *Jackson v. Virginia* legal sufficiency standard *only* applicable standard). This requires the reviewing court "to view all of the evidence in the light most favorable to the verdict and then determine whether any rational trier of fact could have found [the] elements of the crime beyond a reasonable doubt." *Gandara v. State*, 527 S.W.3d 261, 267–68 (Tex. App.—El Paso 2016, pet. ref'd). "We may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt." *Warren*, 614 S.W.3d at 445. "The jury stands as the sole judge of the witnesses' credibility and the strength of the evidence." *Id.* "The jury may choose to believe or disbelieve any portion of the witnesses' testimony." *Id.* "When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party." *Id.*[7]

A person commits the offense of aggravated assault with a deadly weapon if the person intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the assault. TEX. PENAL CODE §§ 22.01(a), 22.02(a)(2).[8]

---

[7] The State contends Appellant did not preserve his complaint regarding the motion for directed verdict on appeal. Appellant challenges the denial of the motion for directed verdict on legal sufficiency grounds, which may be raised for the first time on appeal. *See, e.g.*, *Moff v. State*, 131 S.W.3d 485, 490 (Tex. Crim. App. 2004); *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012) ("However, this Court has held that 'a claim regarding sufficiency of the evidence need not be preserved for appellate review at the trial level, and it is not forfeited by the failure to do so.'" (quoting *Moff*)).

[8] A deadly weapon is anything "designed, made, or adapted for the purpose" of inflicting death or serious bodily injury, or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17).

**B. Analysis**

Turning to the evidence presented at trial, Gabriel Garcia testified that on May 16, 2019, he encountered Appellant and his girlfriend in a store parking lot, and at that time, Appellant directed profanities at him. Gabriel Garcia further testified he sped away home to avoid them. Upon arriving home, he began working on his dad's vehicle. While working on the vehicle, Appellant and his girlfriend arrived to his house at a high rate of speed. Appellant parked behind the vehicle Gabriel Garcia was repairing. Appellant exited his gold Chevy Tahoe with a metal object in hand. When Appellant started moving toward Gabriel Garcia and saying he would pay for the stolen dog, Gabriel Garcia grabbed a bat to defend himself. Appellant began chasing him around the Tahoe, and then Gabriel Garcia began chasing Appellant around the Tahoe, while swinging his bat. Gabriel Garcia testified he may have hit Appellant and the Tahoe's windshield a few times before he slipped and fell.[9] Gabriel Garcia testified Appellant then grabbed the bat and hit him on the head three times, resulting in head wounds that required stitches and bruises on his arm from trying to block Appellant's swings to his head.[10]

This testimony was echoed by Joyce Lenz. Lenz testified she was sitting outside of her mother-in-law's home at the corner of Brown Avenue and Broadway Street, when she saw a beige SUV approach Gabriel Garcia's home "really fast." She testified Appellant got out, walked onto Gabriel Garcia's property, and started screaming at Gabriel Garcia telling him he was going to kill him. Gabriel Garcia was telling him to go away, and he would "beat up" Appellant. A fight ensued, and they ran around the vehicle a few times. The Tahoe's window was broken, but Lenz was not sure who broke it. She also heard screaming and someone saying "call 911." She testified she then

---

[9] Gabriel Garcia testified he only later learned Appellant and his girlfriend had a child in Appellant's vehicle at the time.

[10] The State introduced exhibits of the injuries without objection.

saw Gabriel Garcia run along the sidewalk back to his property, and Appellant followed him and hit him with a bat. Then, Gabriel Garcia's head began bleeding. She did not see whether Gabriel Garcia was armed, and she was uncertain whether Appellant was armed when he exited the vehicle. She also did not know who armed themselves with the baseball bat and did not see who struck first. She testified Appellant was accompanied by a woman and a baby.

Analisha Camacho testified she lived across the street from Gabriel Garcia at the time of the May 16, 2019 assault. She testified she was in her home that day when she heard her dog barking. She looked out the window and saw Gabriel Garcia and Appellant in the street fighting and a vehicle with its back window smashed out.[11] Camacho saw Appellant holding a tire iron and Gabriel Garcia holding a bat; they were swinging at each other. She also saw a third person with a child.

Investigator Daniel Kaufman—who was a canine handler for Atascosa County Sheriff's Office in May 2019—testified he responded to the May 16, 2019 assault around 7 p.m. He testified when he arrived on the scene, Appellant exited his vehicle holding a mechanical ratchet made of metal and a baseball bat.[12] Appellant followed orders to drop his weapons and was detained by a sheriff's deputy. When Investigator Kaufman saw Gabriel Garcia, he was bleeding from the top of his head. He was not sure who the primary aggressor was at that point, so he detained Gabriel Garcia and performed first aid on him.

Two police officers from the Jourdanton Police Department testified about the May 16, 2019 assault. Former Jourdanton police officer Smitty Gonzales testified he was called on May 16, 2019 to Gabriel Garcia's home for an assault in progress. After arriving on the scene and

---

[11] Camacho's 911 call, which contained substantially the same details, was admitted into evidence without objection.

[12] Exhibits admitted into evidence without objection confirmed Investigator Kaufman's testimony regarding the weapons.

reviewing the evidence, he arrested Appellant. He testified Gabriel Garcia had three large injuries on the back of his head. Investigator Maricarmen Kaufman testified she collected evidence on the scene including a baseball bat and a wrench. She also secured surveillance footage from the Atascosa County Probation Office—on the same street as Gabriel Garcia's home—and DNA from Appellant and Gabriel Garcia. The surveillance footage, admitted without objection, shows a gold Chevy Tahoe speeding on Broadway and failing to stop at a stop sign, while heading in the direction of Gabriel Garcia's home on May 16, 2019 at approximately 6:37 p.m. Investigator Kaufman also had the wrench tested for DNA, and the results were positive for Gabriel Garcia's DNA. Investigator Kaufman also testified that when officers spoke to Appellant, he informed them he was defending himself after Gabriel Garcia smashed his window.

Atascosa County EMS technician David Martinez testified that when he approached Gabriel Garcia, he was in pain and appeared to have been hit on the head; later, Officers and Gabriel Garcia informed him Garcia was hit on the head with a blunt object. Martinez observed a baseball bat, a ratchet, and what looked like a metal pipe.

Three Atascosa County Adult Probation Office employees also witnessed the incident from their parking lot approximately one-half to one block away from Gabriel Garcia's Broadway Street house. Brittany Ibarra testified she was leaving the office around 6:20 or 6:30 p.m. when she "heard someone screaming" expletives and saw two individuals yelling at each other. At that point, she did not see whether Appellant was armed. She then heard a loud bang and saw the back windshield on Appellant's vehicle shattered and heard a woman scream "no!" She then saw Appellant grab something from the vehicle's passenger side. She went back to the office and a colleague called 911. When she returned outside, she observed Appellant using a bat or a pipe to hit an individual lying face-up on the ground. Ibarra testified it seemed like Appellant was hitting the individual with the object based on the "loud impact noise," but it was possible Appellant was hitting the

ground itself. When Appellant noticed Ibarra and other Probation Office employees, he placed his hands in the air and vocalized something they could not hear. He then hit the individual two more times and then returned to his vehicle; law enforcement then arrived.

Probation Officer Lara Tristan testified she observed Appellant on Broadway Street fighting with Gabriel Garcia. She then observed Appellant retrieve an object from a brown vehicle and proceed to hit Gabriel Garcia with it. Gabriel Garcia fell to the ground, and Appellant kept hitting him. Tristan returned to her office, called 911, and later went back outside and could still see Appellant hitting an individual. When Appellant noticed Probation Office employees watching, he raised his hands and said something she could not hear. A police officer later arrived and ordered Appellant to drop his weapon, which Tristan believed may have been a pipe.

Probation Office manager Valerie Campos testified she saw an altercation on Broadway Street between Appellant and an individual and then saw Appellant retrieve something from the passenger side of a tan-colored Chevy Tahoe. Appellant and the individual exchanged verbal remarks before Appellant struck the individual and continued until the individual fell to the ground. Campos testified Appellant eventually noticed people observing, raised his hands, and then said something she could not hear. When police arrived, they instructed Appellant to drop his weapon, and he complied.

Dr. Oliver Williams—an emergency medicine physician—testified he treated Gabriel Garcia in the emergency room on May 16, 2019. Gabriel Garcia had three lacerations of two to four centimeters in length on his head. He added the lacerations could have been caused by a baseball bat or a heavy metal object, and they could have been deadly had the force of the blows penetrated the skull.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found Appellant committed aggravated assault with a deadly weapon beyond a reasonable

doubt because he intentionally, knowingly, or recklessly caused bodily injury to Gabriel Garcia and used or exhibited a baseball bat and/or a ratchet during the commission of the assault. *See* TEX. PENAL CODE §§ 22.01(a), 22.02(a)(2); *Warren*, 614 S.W.3d at 445; *Gandara*, 527 S.W.3d at 267–68. Given the substantial amount of evidence, we cannot conclude the evidence was either irrational or unsupported by proof beyond a reasonable doubt. *See Warren*, 614 S.W.3d at 445. We therefore cannot conclude the evidence was legally insufficient.

### CLOSING ARGUMENT

Appellant argues the trial court abused its discretion in overruling defense counsel's objection for improper closing argument because the State's closing argument was an impermissible appeal to community standards. The State contends its closing argument was a proper plea for law enforcement.

### A. Law

We review a trial court's rulings on objections during closing argument for an abuse of discretion. *See, e.g.*, *Milton v. State*, 572 S.W.3d 234, 240 (Tex. Crim. App. 2019). The State is not permitted to argue the "community demands or is expecting a certain verdict or punishment." *Freeman v. State*, 340 S.W.3d 717, 729 (Tex. Crim. App. 2011); *Borjan v. State*, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990). *See generally Cortez v. State*, 683 S.W.2d 419, 420–21 (Tex. Crim. App. 1984) (concluding prosecutor's statement—only punishment jury could assess that would be any satisfaction at all to people of county was life sentence—was appeal to community standards).

"On the other hand, the State is not prohibited from addressing the concerns of the community." *Freeman*, 340 S.W.3d at 729; *Borjan*, 787 S.W.2d at 55–56. It may also make a general argument juries should deter crime by finding defendants guilty because those arguments are an acceptable plea for law enforcement. *Freeman*, 340 S.W.3d at 729–30 (concluding prosecutor asking jury during closing "to send a deterrent message to criminals that killing a peace

officer is unacceptable" not impermissible appeal to community standards because it had been permitted by Court of Criminal Appeals in past, was plea for law enforcement, and nothing in remarks suggested prosecutor was asking jury to forgo duty and automatically answer special issues to ensure defendant received death penalty because victim was peace officer); *Borjan*, 787 S.W.2d at 55–57.[13]

### B. Analysis

Here, the prosecutor argued during closing: "Imagine the message sent to the victim in this case if they're found not guilty." After Appellant's counsel objected and the parties had a bench conference, the court instructed the prosecutor to clarify to the jury, if they do not believe Appellant is guilty, they should not find him guilty. The prosecutor provided the clarification and further explained to the jury he wanted to avoid jury nullification. He added the victim "deserves justice. Message sent to [Appellant] if there's a not guilty in this case." After Appellant's counsel objected again, the prosecutor explained at the bench he had made the same argument at every trial "that you should send a message. . . . [C]riminal law is to regulate conduct, and I'm asking them to find him guilty. I've already emphasized that I'm not asking them to do it if they don't believe it beyond a reasonable doubt." The trial court overruled the objection. The prosecutor then proceeded to argue: "It's important to send a message to [Appellant] that he is going to be held accountable for the way that he continues to behave in this community." Appellant's counsel again objected and was again overruled. Finally, the prosecutor argued "[w]e have to enforce the laws of this community and send the message to this person that we will not stand for this behavior, that it

---

[13] The State may also argue the impact of the verdict on a particular subset of the community. *Borjan*, 787 S.W.2d at 55–56 (Tex. Crim. App. 1990).

went on for far too long and then on May 16th, when he committed this assault, is a bridge too far."

To summarize, the prosecutor argued the jury (1) should consider the message sent to the victim if they found Appellant not guilty; (2) should consider the message sent to Appellant if he was found not guilty; (3) should send Appellant a message that he will be held accountable; and (4) the jury has to enforce laws of the community. The first three arguments do not contend the community demands or expects a certain punishment. *See Cortez*, 683 S.W.2d at 420–21. And the final argument, which asked the jury to enforce the law, is clearly a plea for law enforcement. *See Freeman*, 340 S.W.3d at 729; *Borjan*, 787 S.W.2d at 55–56.

Accordingly, we cannot conclude the trial court abused its discretion by overruling Appellant's objection to the prosecutor's closing argument.

## CONCLUSION

The judgment is affirmed.[14]

Luz Elena D. Chapa, Justice

Do Not Publish

---

[14] Appellant also argues the trial court abused its discretion by denying his motion to reduce pre-trial bail. Because Appellant was convicted of aggravated assault with a deadly weapon and sentenced to twelve years' confinement, the issue is now moot. *See, e.g.*, *Ex parte Peyton*, No. PD-0677-16, 2017 WL 1089960, at *1 (Tex. Crim. App. Mar. 22, 2017) (per curiam); *Danziger v. State*, 786 S.W.2d 723, 724 (Tex. Crim. App. 1990); *Henriksen v. State*, 500 S.W.2d 491, 494 (Tex. Crim. App. 1973); *Oldham v. State*, 5 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).